IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **Robin L. Griffith,** | : | |
| Plaintiff, | : | |
| | | Case No. 3:19-cv-00390-TPK |
| vs. | : | |
| **Andrew Saul,** | : | Magistrate Judge Kemp |
| **Commissioner of** | | |
| **Social Security,** | : | |
| Defendant. | : | |

**OPINION AND ORDER**

  Plaintiff Robin L. Griffith filed this action seeking review of a final decision of the Commissioner of Social Security.  That decision, issued by the Appeals Council on November 5, 2019, denied her applications for social security disability benefits and supplemental security income.  Plaintiff filed a statement of errors on March 16, 2020 (Doc. 9) to which the Commissioner responded on May 28, 2020 (Doc. 13).  The parties have consented to final disposition of this case by a United States Magistrate Judge.  For the following reasons, the Court will **OVERRULE** Plaintiff's statement of errors and **DIRECT** the Clerk to enter judgment in favor of the Commissioner.

**I.  INTRODUCTION**

  Plaintiff protectively filed her applications on April 29, 2016, alleging that she became disabled on March 4, 2013. After initial administrative denials of her claims, Plaintiff appeared at a hearing held before an Administrative Law Judge on July 24, 2018.  Plaintiff's husband and a vocational expert, Karen L. Schneider, also testified at the hearing.

  The Administrative Law Judge issued an unfavorable decision on October 24, 2018.  In that decision, she first found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018, and that she had not engaged in substantial gainful activity since her alleged onset date.  The ALJ next concluded that Plaintiff suffered from a single severe impairment: bipolar disorder.  However, the ALJ also found that this impairment did not meet the criteria for disability found in the Listing of Impairments.

  Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff could perform a full range of work at all exertional levels but that she had nonexertional limitations including the ability to interact only occasionally with supervisors and coworkers and

not at all with the public; the ability to perform only simple, routine, repetitive tasks not at a production rate pace or with strict quotas; the ability to make only simple work-related decisions; the ability to work only in a static setting with few changes; the need to avoid teamwork or tandem tasks; and the need to be off task 10% of the time and to miss one day of work per month.

The ALJ determined that with these limitations, Plaintiff could not perform her past relevant work as a mortgage clerk and paralegal. At the hearing, the vocational expert testified that someone with the residual functional capacity determined by the ALJ could do certain jobs including industrial cleaner, floor waxer, and laundry worker. The ALJ accepted this testimony as well as the testimony that these jobs exist in significant numbers in the national economy. As a result, she concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

In her statement of errors, Plaintiff raises a single issue. She asserts that, based on new and material evidence submitted after the ALJ's decision, a remand under 42 U.S.C. §405(g), sentence six, is warranted.

## II.  STANDARD OF REVIEW

The Court reviews a request for a sentence six remand under this standard:

> For the purposes of a 42 U.S.C. § 405(g) remand, evidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Sullivan v. Finkelstein*, 496 U.S. 617, 626, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990). Such evidence is "material" only if there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988). A claimant shows "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (1984) (per curiam). As noted above, the burden of showing that a remand is appropriate is on the claimant. *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir.1986).

*Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)

## III.  FACTUAL BACKGROUND

The Court will begin its review of the factual background of this case by summarizing the testimony given at the administrative hearing. It will then recite the pertinent information found in the medical records.

Plaintiff, who was 51 years old at the time of the hearing, first testified that she lived in a house with her sixteen-year-old child. She said that she could drive but was subject to panic attacks when she did so. She last worked doing auditing work for a law firm and was a legal assistant prior to that. Her last job ended in a layoff due to a department closure. She actively looked for work for more than a year afterward but did not find employment.

Regarding her impairments, Plaintiff said that she suffered from bipolar disorder and was too depressed to work. Her medications also made her sleepy. She watched television and read books but had trouble recalling what they were about. She had two dogs but her son cared for them. Plaintiff was supposed to be attending mental health counseling frequently but had trouble leaving her house. She also experienced social anxiety. Her ex-husband came to her house several times per week to help with chores.

In 2016, Plaintiff was hospitalized after having a psychotic break. She had not been hospitalized since then but still experienced issues with focus and stress. Her husband confirmed her testimony that he assisted with chores at her home and said that he tried to make sure that she took her medication. He observed that she was in a constant state of depression and that her medication did not seem to be helping that much.

The vocational testimony was as summarized above. The expert confirmed that Plaintiff's past work was skilled and that if she were limited to unskilled work she could not perform those jobs. She identified three medium unskilled jobs which someone with the residual functional capacity described by the ALJ could do, but said that if the person were off task 15% of the time or would miss at least two days of work per month, she could not be employed. The same was true for someone who could not complete tasks in a timely manner.

Both parties agree that the ALJ's summary of the medical evidence is accurate. To recount that summary briefly, the evidence showed that Plaintiff had been treated for psychological disorders on an inpatient basis on four different occasions since 2004, with the last being the one Plaintiff described at the hearing. At that time, she was referred to social services for consultation and subsequently received treatment for mild to moderate bipolar disorder. Notes from two treating sources, Drs. Birdi and Patel, showed that her condition did not impair her capacity for activities of daily living and that she was only occasionally depressed. Her GAF scores were consistently above 50 and at times above 60, with an occasional score in the 41-50 range indicative of serious symptoms. A nurse practitioner, Ms. Dueno, recorded that Plaintiff's presentation was basically normal and that by November of 2017 she had no symptoms of functional impairment. A counselor, Ms. Weber-Gilbert, occasionally noted increased anxiety and panic attacks and moderate to severe depression, but more often indicated that Plaintiff was better and had no or decreased anxiety and was positive and happy.

The ALJ considered the various medical opinions, first giving great weight to the state agency reviewers, Drs. Banks and Tangeman, who diagnosed a severe affective disorder and believed that Plaintiff had mild difficulties in the area of activities of daily living and moderate

difficulties with social functioning and maintaining concentration, persistence, and pace.  The ALJ gave little weight to opinions from Dr. Birdi and Ms. Weber-Gilbert to the effect that Plaintiff could not work, noting that the determination of disability is governed by law and is not a medical judgment, and finding their opinions to be inconsistent with their treatment notes.  The ALJ therefore adopted the mental residual functional capacity findings made by the state agency reviewers, which were the same as had been made in a prior proceeding and included in an ALJ decision dated September 10, 2015.

The new evidence upon which Plaintiff bases her request for a sentence six remand includes a mental impairment questionnaire completed in December, 2018 (two months after the ALJ's decision) by Nurse Practitioner Dueno and Dr. Otto Dueno, both treating sources.  It indicates a diagnosis of bipolar disorder with a current moderate depressive episode and a current GAF of 50.  Plaintiff's signs and symptoms included sleep disturbance, mood disturbances, emotional lability, loss of interest, psychomotor retardation or agitations, difficulty thinking or concentrating, social withdrawal or isolation, blunt or flat affect, decreased energy, and persistent anxiety.  Plaintiff was described as cycling through depressive and hypermanic episodes and her medication management was "a challenge [due to] lack of efficacy...."  She was expected to miss work more than three times per month and had a number of marked limitations including in the areas of concentration, persistence, and pace, completing tasks in a timely fashion, and dealing with work stress.  (Tr. 13-16).

Plaintiff also submitted notes from Dayton Behavioral Care, most of which predate the ALJ's decision.  They confirm, for the most part, the ALJ's characterization of the bulk of the treatment notes, indicating at various times that Plaintiff was doing well and that she did not report any psychologically-based symptoms.  She said she could not work because she "crashed" every few years and it took months for her to recover.  A note from Nurse Practitioner Dueno dated June, 2018 indicated that Plaintiff's condition was getting worse and that she had discontinued several of her medications including one which had been effective in treating her symptoms.  She was also anxious about her upcoming disability hearing.  Her depression was described as moderate at that time and she had no observable symptoms.  At her next appointment her condition had improved but by August she was feeling depressed and was having problems with focus and concentration.  However, by October her symptoms appeared to have lessened.  The notes reflect that they increased again right after she received the unfavorable decision on her disability claim.  The subsequent notes show that Dr. Dueno was adjusting her medications in an effort to improve her condition.  (Tr. 81-104).

## IV.  DISCUSSION

Acknowledging that the standard for obtaining a sentence six remand focuses on the newness and materiality of the additional evidence in question, Plaintiff argues that Dr. Dueno's assessment is new because it was not available until after the ALJ issued her decision, and material because relates to Plaintiff's functional capacity during the relevant time period.  She

also submits that this opinion "illuminates and expands upon the other already existing treating source opinions that were entered into the record well prior to the ALJ's written decision." *Statement of Errors,* Doc. 9, at 6.  Finally, she asserts that good cause existed to submit the evidence following the ALJ's decision because current counsel had not been retained until that time.

The Commissioner responds that the evidence upon which Plaintiff relies showed, at most, that Plaintiff's condition worsened after the ALJ made her decision, and thus is not material to that decision at the time it was rendered.  According to the Commissioner, the treatment notes reviewed by the ALJ and relied upon by her in making her decision are not consistent with the more severe limitations suggested by the additional evidence submitted by Plaintiff, confirming that such evidence speaks more to a worsening of Plaintiff's condition than to her condition at the time the ALJ issued the decision denying benefits.

As noted above, the touchstone of the Court's analysis is whether this additional evidence creates a reasonable probability that, had the ALJ considered it, she would have reached a different decision.  Largely for the reasons advanced by the Commissioner, the Court concludes that there is not such a reasonable probability here.  As the Court's review of the 2018 notes shows, Plaintiff's condition fluctuated in severity over the time period covered by those notes, and the periods of worsening were at, best, temporary prior to the ALJ's decision.  The ALJ discounted other medical opinions about disability primarily based the inconsistency between treatment notes very much like the ones in question and the opinions themselves.  There is no reason to think that the ALJ would have viewed these treatment notes, or opinions based upon them, any differently, or that the ALJ would have credited the December, 2018 opinion's listing of various symptoms and limitations which are not reflected in the vast majority of treatment notes.

It is not entirely accurate that, as the Commissioner suggests, the December, 2018 opinion would not be material to the ALJ's decision because it addresses Plaintiff's condition only after October of 2018.  The narrative portion of the opinion indicates that the reasons why both signatories considered Plaintiff unable to work included the "cycling" of her condition over a period of time that, in part, predates October, 2018.  Nonetheless, for the reasons stated here, the Court does not believe there to be a reasonable probability that the ALJ would have given that portion of the opinion any significant weight or that she would have changed any part of her decision based upon it.  Other courts have followed similar reasoning in concluding that a later-expressed opinion relying on earlier, inconsistent treatment notes would not, in all probability, have altered an ALJ's decision denying benefits. *See, e.g., Holman v. Comm'r of Social Security,* 2019 WL 696943 (S.D. Ohio Feb. 20, 2019), *report and recommendation adopted* 2019 WL 2384870 (S.D. Ohio, June 06, 2019); *Cross v. Comm'r of Social Security*, 373 F.Supp.2d 724 (N.D. Ohio 2005).  For all these reasons, the Court concludes that Plaintiff has not met her burden of demonstrating that a sentence six remand is warranted here.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **OVERRULES** the statement of errors (Doc. 9) and **DIRECTS** the Clerk to enter judgment in favor of the Defendant Commissioner of Social Security.

    /s/ **Terence P. Kemp**
**Terence P. Kemp**
**United States Magistrate Judge**